BATE REFRIGERATING Co. *v.* GILLETT and others, impleaded, etc.

*(Circuit Court, D. New Jersey.* September 13, 1881.)

1. LETTERS PATENT—PRESERVING MEATS.

Letters patent No. 197,314, granted November 20, 1877, for improvement in processes for preserving meats during transportation and storage, consisting in enveloping the meat in a covering of fibrous or woven material, and subjecting it to a continuous current of air of a suitable temperature, are not invalid for want of novelty.

In Equity.

*Dickerson & Dickerson,* for complainant.

*Chas. H. Winfield,* for defendants.

NIXON, D. J. This bill is filed against the defendants for the infringement of letters patent No. 197,314, dated November 20, 1877, for "improvement in processes for preserving meats during transportation and storage."

The answer of the defendants sets up various defences to the complaint: (1) It denies the novelty of the complainant's patent; (2) it denies infringement; (3) it alleges a prior use for more than two years; (4) that the claim is too broad, embracing more than the patentee's invention; and (5) that the alleged improvement consists of a mere aggregation of operations, producing no new result. · But the testimony largely turns upon the question of novelty.

The patent is for a process, and has reference to the transportation and storage of meats in large pieces, either by railway or steamer. The patentee states in his specifications that the object of the invention is to prevent the discoloration of the surface of the meat and the taint to its external portions, which, by the methods hitherto adopted for preserving the same during transportation, frequently occurs. The patent is a combination, comprising two elements or constituents: (1) Enveloping the meats in a covering of fibrous or woven material; and (2) subjecting the same to the action of a continuous current of air of suitably low or regulated temperature. Neither was new. Meats had long before been covered to keep them from dirt or dust in transportation; and refrigerators had been used to subject them to the action of currents of chilled air, and thus hindering decay. But the patentee claims that a new and useful result was found to proceed from the combination, to-wit: preserving the natural color or complexion of the meat during transportation, and thus having, at the end of the trip, a more merchantable article.

The theory on which the patent rests is that fibrous or woven material has the power of absorbing from the atmosphere the germs which provoke incipient decay on the surface of the meat. It acts as a filter, straining from the air the animalcula or microscopic particles that tend to discolor the meat or cause putrefaction. The air is supposed to be full of these spores, so minute that they have never been seen or detected with the microscope, and yet so numerous that 3,200,000,000 are capable of being generated on a single square inch of the surface of decaying meat.

Whether these speculations of the scientists be true or not; whether the preservation of the bloom or natural color of the meat arises

from the protection against atmospheric germs that is afforded by the fibrous material with which it is covered, or from some other cause,— I think the weight of the evidence is that such a result, in fact, follows, and that the combination of the complainant's patent was the first which revealed it to the public. I have been led to this conclusion from the general testimony, and more particularly from the experiment which was made in Brooklyn during the progress of the case, and which has been detailed by Prof. Morton in the complainant's record, p. 182, as follows:

"On Thursday, February 19th, I went over to Brooklyn to the store of Messrs. Coker Brothers, 635 and 637 Fulton street. I there found two hindquarters of beef which I was told were from the same animal and the carcass of a sheep. These were photographed by Mr. Landy for the purpose of retaining a record of their similar condition. One of them was then covered with burlaps, or cotton cloth, (I have a specimen of that at home,) and a portion of the sheep's carcass—that is, the middle part—was likewise covered with the same sort of material. The three pieces were then hung in a refrigerator, consisting of a box with a partition on one side filled with ice, in which refrigerator they were locked. When the covering was put on I sealed a string, passing through the covering and the meat in each case, in such a way as would render it impossible to remove it without breaking the seal. I retained the seal and also the key of the ice-box, there being merely an opening into the ice compartment by which ice could be put in. On March 8th I again went to the same place, opened the safe, had the meat taken out, examined the seals, found them intact, had the coverings stripped off, and then compared the various pieces of meat. Of the two quarters of beef, that which had been covered with burlaps was bright and fresh, and showed no change of color or clamminess on its surface. That which was uncovered showed decided darkening in many parts, and was generally moist and clammy to the touch, and showed in many places a white deposit resembling mould. The sheep's carcass showed in the uncovered portion a decided change of color in parts, and was also there moist, while in the covered part it appeared exactly as when it was placed in the box. * * * On rubbing the finger upon the uncovered beef I noticed a slight musty smell, which was not perceived in a similar test of the covered beef."

This statement of the experiment and of the result is fully confirmed by the testimony of David Levy, the butcher who slaughtered the bullock, and of Edward and W. R. Coker, on whose premises the trial took place; and it seems to be conclusive that the new and useful results claimed by the patentee do follow the covering of the meat with burlaps or cotton cloth, under the conditions set forth in the patent.

With such a construction of the patent not much attention need be given to the question of infringement.

The inventor, referring, in his specifications, to the practice of his invention, says that he provides any suitable chill-room or refrigerating chamber within or through which a current of air is produced. Such current may be either from the external atmosphere through the chill-room and thence out again, or the room or chamber may be closed against access of the external atmosphere, and its contained air be caused to pass, over and over again, through a suitable ice-box or equivalent means of reducing the temperature thereof; and this causing the air to pass repeatedly through the said ice-box, or the like, may be either by a change in the density of the air, as in the well-known Lyman refrigerator, or the circulation of the air through the ice-box may be produced by means of a fan-blower.

In the defendant's apparatus, the refrigeration is accomplished by a series of pipes arranged around the walls of the refrigerating chamber, extending nearly to the ceiling, through which the brine is mechanically forced. The air, being chilled by the pipes, flows out to the center of the chamber, where it comes in contact with the meat, and, being warmed by it, rises and flows to the sides of the box, where it is again cooled by the pipes. The meat, covered with burlaps or with cotton goods, like shirting, is exposed to this continuous current of air.

It does not require an expert to prove that such a process of cooling, with such a covering of the meat to be transported, falls within the claim of the complainant's patent.

There must be a decree against the defendants for the infringement, and the usual reference for an account.